Good morning, Your Honors. May it please the Court, Daryl York on behalf of the appellants. I'd like to reserve one minute for rebuttal. All right. Thank you. Your Honors, the issue before this Court is whether, based on the totality of the circumstances, the officers had an objective, reasonable basis for concluding that an emergency was unfolding in my client's apartment. The District Court relied on the three cases, Brigham City, Ames, and Snipes, to determine that they did. However, in those three cases, in each one of them, there was an emergency unfolding or accident circumstances to warrant the officers to enter those particular locations. In this case, there was no indication that my clients needed any assistance or there was an emergency unfolding within their apartment. I set forth 15 different factors. My brief said 13, but actually there's 15 I miscounted. Fifteen different factors as to why there was no basis, objectively reasonable, that they believed that my clients needed assistance. The apartment building that they went into was three south of where the actual incident was happening. The apartment building where they were supposed to go was on a major thoroughfare. It was two lanes in each direction. My clients were on a small street. Counsel, the nub of the issue in this case, at least for me, is the question of qualified immunity. What is your best case to articulate that under the particular circumstances here, the officers violated a clearly established right, keeping in mind that the Supreme Court has said over and over again that it cannot be defined at a high level of generality? I understand. Officers are trained from day one that there's four bases for entering an apartment. Search warrant, consent, accident circumstances, or hot pursuit. There's nothing here. They know there was no probable cause to believe that anything was happening at my client's apartment. They know if they go into the wrong apartment, it is a Fourth Amendment violation. They're taught that from day one. Those are general principles, but do you have a case where the facts mirror the facts in this case? No, I don't, Your Honor. There is a case on point, I think I cited in my brief, that it is established that, if I have one moment, Your Honor. Well, in Garrison, the officers went into the wrong apartment, and the court felt that it was a good search. But in Hartsfield, the court denied qualified immunity, and that was Hartsfield v. LaMax, 50 Feds 3rd at 950. And it is a Fourth Amendment violation unless the officers engage in reasonable efforts to avoid error. Here they did not. I mean, they were blatantly on the wrong street. They weren't even close to where they were supposed to be. Well, Garrison says that's a Supreme Court case, and it seems to be the only Supreme Court guidance we have that's very relevant. And it says, well, if they make a mistake, it's not an innocent mistake, it's not a Fourth Amendment violation. And what else do we have that would indicate to these officers that what they did was a Fourth Amendment violation? Well, I think first and foremost, there was nothing to indicate anything was going on. No, I'm talking about cases. Oh, cases. It's just Garrison, Your Honor. But Garrison, I think, can be distinguished. Okay. That's going to be a problem in terms of qualified immunity if you don't have an analogous case. Well, I understand that, but I still believe that the officers were unreasonable in their actions, and they knew that going in. Do you want summary judgment? Is that what you want? Pardon me? What is the remedy you want? What should the district court have done? Granted, you summary judgment or sentencing trial? No, I didn't seek summary judgment. You want a trial. Yes. You want a trial. Yes. And I think the jury should decide whether the officers' actions were objectively reasonable. So you don't mean to say that it was unreasonable as a matter of law. You want to say that there's a question. Yes. I think the jury should decide that fact. So for the qualified immunity aspect, you're saying that the principle is that a reasonable officer would know that if they don't engage in reasonable efforts to avoid error and they go into the wrong house, well, that's a violation. All right. If I accept that, if we accept that, though, then doesn't every case of going into the wrong house automatically become a jury question of whether or not the officers engaged in reasonable efforts? I don't think everyone. I think it's on a case-by-case basis based on the facts. And what does that then do to the doctrine of qualified immunity? Well, it may throw it in turmoil. I agree with that. Yeah. Thank you. So but that basically, you know, I mean, it is what it is. This is not a complicated. I don't think it's a complicated case. I think it's a sad case, but I think they went to the wrong location. The officers here departed immediately after realizing their mistake, right? Yes. How long were they in the apartment? My understanding was about three minutes. They went in, drew their guns on my clients, did the search, and then left and came back. You want to save your remaining time? Yes. Thank you. Thank you. Good morning, Your Honors. Michael Walsh for the Deputy City Attorney for the City of Los Angeles. Obviously, we feel there was no constitutional violation in the first place, but I think that's been well briefed. The court clearly is more focused on qualified immunity, so we'll start there. But I think the court— Well, the apartment that they entered was how far away from the apartment that they were supposed to enter? It wasn't next door, right? It was several— There was one building between them. It was a different street. It was a different street. The mischaracterization of that is that they weren't trying to enter the building, the correct building from Parthenia. Parthenia is a larger street, and that would be— But they were told— This is a gated apartment community. They were told by the caller to go through the entrance to this gated community and come around the back of the building. So they weren't planning on being on Parthenia. They knew they were going to be in some small back alley or back street to come up from the other side of the building. So the fact that it didn't look like Parthenia is completely a red herring. They weren't planning on being on Parthenia. That wasn't what they were told to do. They were instructed to come through the entrance to make a right turn in an alley, and that would take them to the correct building. It was after midnight. It was dark. They missed the only alley and made the first right turn that they thought was available, and that brought them to a building with the correct number. So they thought they were at the right building. Under the circumstances, I think the facts aren't in dispute. I don't think there's any question that that's reasonable under the circumstances. There's no question of ill will here. There's no question at all, not even a suggestion, that the police were up to something nefarious, were looking for some excuse to go into the wrong apartment. This was an honest mistake. No, but, well, we don't... There's no... That's a question. I mean, whether... There wasn't bad faith, but whether or not they were unreasonable in their efforts to make sure they were at the right apartment when there was no indication that there was emergency going on... Oh, that's not true, Your Honor. There's absolutely an indication there was an emergency going on. When they entered this apartment? Absolutely. Why? Because there was a 911 call that was live and active about someone trapped in a bathroom. They thought they were at the apartment... No, I understand that. But when they got to this apartment, there was no noise coming from it. Correct. And rather than barge in, they immediately stopped. They knocked on the door, didn't get a response, backed up, called back in to say, there's something going on here, it's dark, it's quiet. They went to double-check the number on the building, which was, of course, the correct number. The 911 caller then tells them, well, I'm on the line, she's trapped in the bathroom. The other thing the officers requested was to have her come out so they wouldn't have to go into the apartment at all. That was their first hope. They were told the person who was trapped in the bathroom couldn't come out, and the 911 caller suggested that, and I guess this happens because domestic cases are very violent and very volatile, that knowing the police were on their way, he told everyone to be quiet so the police would leave. So at that point, a dark apartment is entirely consistent with a 911 call. There's a domestic dispute ongoing. There's someone who's being beaten in front of a 5-year-old, or, I'm sorry, it was a 3- or 5-year-old child, I forget the age of the young child. And the 15-year-old is trapped in the bathroom calling 911 and is on the phone. Would you agree, and I know this is not this case, it's a hypothetical, but would you agree that if there was plenty of evidence that officers engaged, or that officers failed to engage in reasonable efforts to avoid error, and that caused them to go into the wrong house, we'd have a constitutional violation? Would you agree with that? I guess, yeah. We really have some sort of dispute that would need to be looked at, whether it's a, yes, yeah. Then how would you apply qualified immunity under that hypothetical? Is it, well, how would that be analyzed? Well, I think any time qualified immunity, it's analyzed under a particular factual scenario. And in this case, of course, the facts are undisputed, so the court can do that. The question is, were the efforts taken by the officers reasonable under the circumstances? And if the answer to that is that's a jury question, then that also answers the qualified immunity problem? Well, if the answer to that is we're not sure, then qualified immunity applies. The Supreme Court's pretty clear about that. And that's what I'm asking. If we have a factual dispute for a jury on whether or not officers engaged in reasonable activity, and I know your argument here, but it's hypothetical. If we have a factual question, does that also then mean we can't give qualified immunity or shouldn't give qualified immunity? I think if under the facts in question it's not clear, qualified immunity applies. I think the Supreme Court's pretty clear about that. It would have to be a clear violation based on the facts. And, of course, every case is going to be fact-specific, so that gets into the weeds of exactly what facts we're talking about. So if, as a matter of law, the officers were unreasonable, then qualified immunity, they lose qualified immunity. If it's a fact question for a jury, otherwise, if it's a fact dispute, maybe they were reasonable, maybe they weren't, then your position is they get qualified immunity. I think the Supreme Court's pretty clear about that. Which case says that? Well, I think Garrison ultimately says that. I think that's the point of qualified immunity, is unless there's a clear directive of the officers in the field that what they're doing is unconstitutional, then essentially tie goes to the runner. Otherwise, you have officers constantly. Garrison doesn't talk about immunity. No, no, no. In terms of the scope of quality, well. What Garrison says lays down a standard of if it's an innocent mistake, reasonable mistake, it's not a Fourth Amendment violation. No, you're right. I misspoke. That's right. Garrison doesn't even get to qualified immunity. That was my mistake. And I'm sorry. I don't have a case off the top of my head on the ---- So it would seem to me, if we follow from that, that if there's a question as to whether or not this was an innocent mistake or whether or not they were reasonable in what they did, it would be a jury question and there wouldn't be immunity. Except that's qualified immunity. That makes qualified immunity the same as whether or not there was a constitutional violation. There becomes no separation between those. The whole point of qualified immunity is to give protection to officers in the field who are in good faith and have no reason to believe what they're doing is unconstitutional. Based on the knowledge they have and the information available to them. That's a very difficult question as to what room there is to ever get to trial on a Fourth Amendment violation like this. They went to the wrong apartment. Right. There's no question about that. And immediately withdrew as soon as they realized that. But under the circumstances, they were given specific directions about how to get to the building where an emergency was ongoing and taking place. They followed the directions to the best of their ability in dark, in the midnight, under exigent circumstances. Because this is an ongoing violent criminal act taking place in real time. They get to the building. They don't disbarge in. They call back 911. They ask the person to come out. They knock on the door. And they're told, no, this is ongoing. They're probably keeping it quiet. They say, no, you're here. They're hoping you'll go away. There's a crying 15-year-old trapped in the bathroom. There's a beaten mother in the bedroom. And he's hoping you'll get back and go away. Under those circumstances, they went in. And as soon as they realized they were in the wrong place, they immediately did a, of course, there's no question at all about. Who said that? Who said that they're hoping, they're staying quiet in the hopes that the officers would go away? I believe that was the 911 caller who suggested that. To the officers? Correct. Not that I want to ask you to do our job, but I think I'm going to. Well. Should this be decided on a finding of no constitutional violation from your perspective? Absolutely. Or on qualified immunity? I believe it should be found on no constitutional violation. But the court seemed interested in qualified immunity. So that's why I started my conversation. But I think there's clearly no constitutional violation at all. I think the law is pretty clear on that. I think Garrison speaks directly to that. The facts in this case are much more compelling for the officers than Garrison was. Garrison, there were no exigent circumstances. The information, the correct information about the number of apartments was readily available. They just didn't bother to cross their T's and look at where they were going. And the Supreme Court still said, you know, it's an innocent mistake. Despite the fact that the correct information was readily available, they just didn't bother to get it. But they didn't mean to make a mistake. Therefore, no constitutional violation. In this case, we have exigent circumstances. We have a good faith effort by the officers to double check when it looks like they may be in the wrong place or maybe it isn't what was reported to them initially. And as soon as they find there's something wrong, they immediately withdraw. Because, of course, that means someone's being beaten in a different location that they have to get to right away. Because, again, these are exigent circumstances. I think the facts in this case... Well, couldn't they have turned on a navigator of some sort in order to figure out that at the right location, given the severity of the consequences of busting in to the wrong apartment, drawing guns? If there's some question as to whether they're in the right apartment or not, I think with technology, it would be easy to verify. So I think the question of reasonableness, I don't know, it's not as clear-cut as you argue. In terms of using additional technology, I don't know where that came up. They double-checked the number of the building, and so they... Well, no, I pose that as a question of reasonableness. Because you're saying, oh, they made a mistake, they admitted it, they withdrew as soon as they found out. But if there are readily available methods that they can easily use to verify the accuracy of the location, that goes through reasonableness. And that's a fact question for the jury to evaluate. So that's why I say well-qualified immunity, I think, is the stronger argument for you in this particular case, I think. No, I can appreciate that. And I think either would apply in this case. I think in the case of checking the number of the building, I think the assumption was any reasonable person building an enclosed apartment complex like this would have a unique name or a number on every building. So it never occurred to the officers there'd be two buildings with the same number in the same apartment, in the same gated community. So once they checked the number on the building, that was confirmation to them they were at the right place because they were at the right address. I thought on parallel streets there's frequently buildings and houses have the same number. Oh, there's 100 numbers you can use for each block. You don't have to use the exact same number. You can offset it by two or three and have a unique number. And gated communities typically do that. This one didn't.  I'm not suggesting that was a violation of the law. Yeah, I didn't think it was that unusual in a large complex to have the same numbers. But I guess that's not in the record, huh? But, no, there's no law requiring that. I'm not suggesting the apartment building maker did anything wrong in that regard. But, no, I think in terms of in comparison to garrison, I think in terms of using additional technology or things like that are certainly extra steps that are far more extensive or call for much more than garrison called for for its officers. Because all they had to do was count the number of mailboxes in front of the building, which was right there for them. And they didn't bother to do that. Right. Thank you, counsel. But in any case, I'm going to... Just briefly, Your Honors. First of all, in the record, I submitted aerial photographs of the location. And you can clearly see they weren't even close. Counsel indicated that they followed the directions of the caller. They did not. They drove right by the alley and then went down another street. So they drove not one, two, but three apartment buildings south. Also, to show they're unreasonable, the dispatcher had the caller on the line. When they walked up to the apartment, it was dark. There was no sounds coming from the apartment. And the entire time they were there, the dispatcher had the 911 caller who said she was locked in the bathroom. Well, common sense dictates, oh, she said she can't come in there. Ask her, are your lights on? Can you come to a window? They didn't do any of that. The other thing they didn't do is they also indicated, oh, because they were asking their deposition. Well, why didn't you check around the back for other windows? Oh, there were no other exterior windows other than the front. That's a lie. That was false. And the record indicates that from a declaration from the son. There were exterior windows. They didn't do any of that. The officer did think, oh, perhaps I'm at the wrong location. So he steps out on the street, calls dispatch, verifying the address. Yeah, those are the numbers. They've been in that complex, one officer, at least ten different times. The other officer, yeah, I've been there about three times. And I've been on that street. They should have known they were not on Parthenia. That area of Los Angeles, Northridge, Parthenia is a major, major street. And that building they were supposed to go to fronted Parthenia, but yet they go to a small street that they described. Here's my problem. Yes. Why is their mistake so much worse than what happened in Garrison? It should have known that they made a mistake. They thought there was one apartment, and they were wrong. They went into the wrong one. Right. In Garrison, they had a search warrant. So they didn't have to have the probable cause because they had the signed search warrant. And apparently the apartment was divided into two different sections. In this case, you have to have, in order to enter an apartment under exigent circumstances, you have to have probable cause to believe that a crime is committed in that apartment. And in the other cases, you know, Brigham City and Ames and Syph, in all those cases, there was indication that something was going on inside that apartment. Here there's lack of that. So based on that, I think they were not reasonable in their actions. And if the court were to find that the officers were entitled to qualified immunity, that still does not defeat the state claims. Although I thought the state claims would be defeated if they were acting within the scope of their employment. Am I wrong? That's not correct, Your Honor. Okay. What is the standard for the state immunity? Well, the state immunity is they, the court relied on, I think, 821.6. That was for prosecutors and judicial and administrative actions. This was not an administrative or prosecution action. So the other immunity was, I think, 821.8, which the district court did not cite. They cited 821.6, but 821.8, an officer is, I believe, immune from prosecution if his actions are authorized either expressly or implied by law. And we don't have that here. All right.  Thank you, Your Honor. Thank you to both sides for your argument. The matter is submitted for decision.
judges: Schroeder, Nguyen, Simon